PLUNKETT *v.* HAYS.

Opinion delivered November 25, 1929.

506

*Isaac McClellan* and *H. K. Toney,* for appellant.

*Coleman & Gantt,* for appellee.

BUTLER, J.   Suit by J. P. Plunkett against George A. Hays for damages because of negligence resulting in the death of plaintiff's child; verdict directed for defendant; judgment entered in accordance therewith, from which this appeal is prosecuted.

The testimony in this case presents a most unusual and tragic occurrence. The defendant in the court below was and is a practicing physician in charge and control of the Jefferson County Clinic. In October, 1928, the wife and two children of the appellant, having been exposed to typhoid infection, visited the Jefferson County Clinic, where they were administered the preliminary treatment for the prevention of typhoid by having a serum injected hypodermically in the muscular tissues. These injections were made by a Mrs. Ferguson, one of the nurses in attendance at the clinic, and, after an interval of a few days, Mrs. Plunkett and her two children visited the clinic for a second administration of the anti-typhoid serum. They had spent the night before with relatives in Grant County, and, on their return to Pine Bluff, where they lived, went to the clinic, at about 2:30 o'clock in the afternoon, where a nurse gave each of them a treatment for the prevention of typhoid. One of the children was a girl about five years of age, who, within a short time after the injection of the typhoid serum, began to suffer great pain. Her mother conveyed her and the other child in their car to their home, and a physician

was immediately called. Not only was the little girl, Chlorine, very sick by that time, but the mother and the other child also. They all developed a high temperature, Mrs. Plunkett's temperature registering about 104 degrees, the other child being very ill, while Chlorine was suffering from a temperature of about 108 or 109 degrees, accompanied by convulsions, and died about seven o'clock the following morning. After a time Mrs. Plunkett and the other child recovered from their illness.

The testimony of the mother and of the father, the appellant, was to the effect that all these persons were and had been in good health at the time of the administration of the typhoid shots, and that the child, Chlorine, who died, had never before that time been ill at all. The physician arrived at the home of the Plunketts some time in the afternoon, and remained in attendance upon the child during the night. Upon the death of the child the physician certified that the death was caused by protein poison. This, as explained by the physician, would be caused by "some food substance getting into the blood current." A sample of the child's blood was taken by the physician and given to a bacteriologist for examination, whose report showed that it contained no malarial parasites, and the count of the blood cells proved that the white blood cells were in greater amount than normal, which he explained would have been caused, among other things, from infection, but that such infection would not have been caused by typhoid. After the death of the child the appellant visited Dr. Hays' clinic and made inquiries of the doctor in an effort to ascertain the identity of the nurse who administered the typhoid shots. This information was refused by the doctor, the appellant stating in his testimony that the doctor gave as a reason for refusing this information that "I was looking for trouble, and that he (the doctor) did not want to get his nurses into any trouble, and that he was liable for what they did."

Appellant thereupon brought this suit, alleging in his complaint and amendments thereto that the "appellee

508

(defendant) was negligent by injecting said serum in a vein, or by injecting the wrong serum, or by injecting some poison, the name of which is not known to the plaintiff, or by using a needle which was infected with poison, or by injecting said serum too deep in the arm, or by failing to properly sterilize said arm, or by failing to properly sterilize said needle, or by not exercising ordinary skill practiced by persons giving serum injection;" and further, that the defendant "did not use ordinary care, and was negligent in employing an incompetent nurse or employee, who gave the shots which caused the death of the said Chlorine Plunkett."

On the trial of the cause the testimony above was adduced, and other testimony to the effect that the puncture made by the hypodermic needle showed no signs of inflammation, that it was administered at the proper place, and, from outward appearances, seemed to have been administered in a proper and skillful manner, and that the death of the child might have been occasioned by pernicious malaria.

In testing the action of the court in directing a verdict the testimony must be given its highest probative value in favor of the party against whom the verdict is directed, and must be viewed in the light most favorable to the appellant, and, where there is any evidence tending to establish an issue in favor of the party against whom the verdict is directed, it is error to take the case from the jury. *Cruce* v. *Mo. Pac. Ry. Co.*, 167 Ark. 88, 266 S. W. 981. Applying this rule to the testimony in this case, we think that there was sufficient evidence to submit the question of the appellee's negligence to the jury. It was shown that typhoid shots had been administered to the child by Mrs. Ferguson without any ill effect, and it is a matter of common knowledge that typhoid serum, when properly administered, results in only a temporary inconvenience, and in no serious illness. The fact that the child had been well until the time of the second administration of the serum, and that immediately thereafter

she became violently ill, with a temperature which could not ordinarily be attributed to malaria, that she had convulsions, and in a short time became "profoundly unconscious," that the physician who attended her gave at one time as his opinion that the death was caused by protein poisoning, that no malarial parasites were found in the blood, that the count of blood cells revealed a greater amount of white cells than the normal quantity, and that this might have been because of infection, and that defendant refused to disclose the identity of the nurse who gave the shots, and offered no explanation as to the manner in which the treatment had been given, might have warranted the conclusion that typhoid serum was not in fact administered, but some other and different injection which was destructive to the human organism; or that, due to the negligence of the nurse in not properly sterilizing the instrument used, or because of its improper use, the germ of some malignant infection was intruded into the circulation. At least it cannot be said, under the facts presented in this case, that the minds of reasonable men, without difference of opinion, would have concluded that there was no testimony from which an inference of negligence might be drawn. Negligence cannot be inferred from the mere fact that the child died, yet the fact of the child's death is a circumstance, taken together with the other circumstances in the case, from which the jury might have concluded that the negligence in the treatment complained of was the cause of the child's death.

The appellee cites the cases of *Arkansas Midland Railroad Co.* v. *Pearson,* 98 Ark. 399, 135 S. W. 917, 34 L. R. A. N. S. 17, *Norton* v. *Hefner,* 132 Ark. 18, 198 S. W. 97, L. R. A. 1918C, 132, and *Runyan* v. *Goodrum,* 147 Ark. 481, 228 S. W. 397, 13 A. L. R. 1403, and, under the holding in those cases, asserts that, even though the nurse might have been negligent in making the hypodermic injection, appellee is not liable, because the act could be performed by the nurse as well as by a physician, and

that he was not present and did not designate the nurse to administer the treatment. The cases cited have no application to the present state of this case, for, according to the testimony of the appellant, which is all the evidence on that matter, the appellee not only refused to give the name of the nurse, but expressly avowed his responsibility for her action.

For the reasons given it is apparent that the court erred in directing a verdict for the defendant, for which error the judgment is reversed, and the cause remanded for a new trial.